UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TUNIESHA JORDAN,

    Plaintiff,

v.

WAYNE COUNTY, SHERIFF WARREN
EVANS, MICHELLE GARLAND, FRANK
WOOD, DERRICK RUSHING and
DYNICE GAINES,

    Defendants.
                                                /

Case No. 08-cv-11442

HONORABLE STEPHEN J. MURPHY, III

## **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This is a civil rights action brought by the plaintiff, Tuniesha D. Jordan, against Wayne County and against Wayne County Sheriff deputies Frank Wood and Derrick Rushing for alleged violation of constitutional rights and state law torts arising from Jordan's arrest outside Highland Park High School in April, 2006. Defendants Garland, Evans and Gaines have already been dismissed by stipulation of the parties. The remaining defendants now move for summary judgment.[1] Plaintiff concedes that the municipal defendants should be dismissed. For the reasons stated below, the Court will grant defendants' motion for summary judgment in its entirety and enter judgment for the defendants and against the plaintiff on all counts.

## **FACTS**

The following facts are drawn from the record, and are considered in the light most favorable to the plaintiff, the non-moving party.

---

[1]The plaintiff filed her responsive brief a day late, even after the two extensions of time granted by the Court had expired. In the interests of justice, however, the Court will waive the late filing and consider the arguments made by Jordan in her response.

On April 3, 2006 a student riot broke out at Highland Park High School as classes were in session. Wayne County Sheriff deputies dispatched to the school were informed that there were approximately 23 fights going on inside the school. (Derrick Rushing Dep.75) (Exhibit B to motion for summary judgment). Deputy Rushing described the scene as "very dangerous, it was very unsafe for anybody.... a lot of assaults were going on and it was very chaotic." *Id.* at 76. The deputies were also informed that persons inside and possibly outside the school were calling other individuals to come up to the school to participate in the fights and could have been bringing assault-type weapons to the school. *Id.* The deputies were told to secure the perimeter of the school to keep every outsider from coming inside. *Id.* Over 20 arrests were made that day. *Id.* at. 77. All arrested were juveniles, except for plaintiff Jordan. *Id.*

Sergeant Garland instructed Officer Wood to guard one of the doors to the school. (Frank Wood dep. 73) (Exhibit C to motion for summary judgment). Plaintiff Tuniesha Jordan, a postal worker, arrived about 15 minutes after Officer Frank Wood was posted outside one of the doors of the school. *Id.* at 44. Jordan's daughter had earlier called Jordan and told her that she (the daughter) had been suspended from school for fighting and wanted to be picked up. (Jordan Dep. 45, 47) (Exhibit B to Response to Motion for Summary Judgment). Jordan walked up to the door of the school where Officer Wood was posted and was told by Officer Wood that "nobody can enter right now." (Wood Dep. 44). Jordan told Wood she was there to get her child, and Wood repeated that nobody could enter the school at that time. *Id.* Jordan stepped away from the door, and Wood briefly stepped inside to see what was going on inside the school and speak with a security officer. *Id.* at 45. Moments after Wood turned away from the door, Jordan walked into the doorway attempting to enter. *Id.* at. 48. Wood walked toward her with his arms raised and

2

again told her that she could not come into the building. *Id.* at 49. Jordan backed up out of the school. *Id.* Wood then walked backwards, back into the doorway of the building. *Id.* at 50. Jordan then approached the door again and the two became engaged in a conversation about her trying to get back into the building. *Id.* at. 51. Jordan said something to the effect of "if I was a man I'd kick your ass" and Wood responded that there was nothing between them but "[air] and opportunity." *Id.* at 76. Jordan's version of this discussion differs slightly, in that she stated that "if I was a man the way he disrespected me I would whoop his butt." (Jordan Dep. 32). Jordan also testified that Wood was disrespectful, nasty and aggressive. *Id.* at 31.

According to Wood, during their third encounter, Jordan tried to force her way past Wood into the school building. (Wood Dep. 55). Wood stated that he put his hands on Jordan and told Jordan that she was under arrest. *Id.* at 55-56. Wood grabbed Jordan's jacket and shirt. *Id.* at 56. Jordan took a swing at Wood with keys in her hands. *Id.* p. 81. Wood attempted to handcuff Jordan. *Id.* at 59. Jordan is short, about five foot, and weighing about 160 pounds and Wood is about 5'10" and weighs about 210 pounds. *Id.* at 60. Wood struggled to get the handcuffs on Jordan. *Id.* at 61. Wood ultimately pushed Jordan up against a vehicle parked outside and, with the assistance of several other officers, succeeded in handcuffing Jordan. *Id.* at 62.

Jordan denies trying to force her way past Wood on their third encounter. According to Jordan, she walked out of the building after her third encounter with Wood and Wood followed her, pushing her forward three times, in a direction away from the school. (Jordan Dep. 64-67). Jordan described the pushes to be like a "tag football" player would push someone. *Id.* at 64. Jordan states in her deposition that she turned around after the third push and told Wood he had gone too far. *Id.* at 67. Jordan testified in her deposition that

3

she turned and started walking towards Wood, at which point Wood grabbed her by the collar and lifted her off the ground.  *Id.*  In her criminal trial, however,  Jordan stated that when she got close enough to Wood he grabbed her, and she "swung to get him away" from her.  *Id.* at 72.  Jordan also testified in her criminal trial that she was not sure Wood lifted her off the ground, but he did "grab [her] up."  (Trial  tr. 94) (Exhibit E to motion for summary judgment).  Jordan testified in her deposition that her move towards Wood "could be taken for aggression" but that was not her intention.  (Jordan Dep. 68).   Wood told Jordan that she was under arrest.

Jordan testified that she asked Wood to not pull her arm back.  (Jordan Dep. 80). Jordan testified that Wood aggravated a pre-existing shoulder injury a bit by pulling her arm behind her back.  *Id.* at 78.  Jordan testified at her trial that she felt some pain in that arm afterwards, but no more than usual.  (Trial tr. 117).  Jordan concedes that she was not struck, punched, kicked, and suffered no permanent physical injuries.  (Jordan Dep. at 79). Jordan claims that she was "slammed on the car" but does not assert either in her complaint or any evidence before the Court that any specific defendant slammed her on the car.  Jordan asserts that as a result of the incident she suffered humiliation, missed work, couldn't sleep, had nightmares, and doesn't like being around police officers.  *Id.* at 74.

Defendant Deputy Derrick Rushing was Wood's partner at the time of the incident in question.  Jordan's claim against Rushing is based on the fact that he rode in the patrol car with Jordan while she was taken to the police station.  (Jordan Dep. at 34).

Jordan was prosecuted for violation of Mich. Comp. Laws § 750.81d(1), which makes it a felony to assault, batter, wound, resist, obstruct, oppose or endanger anyone who the

4

person knows or has reason to know is performing his or her duty. She was acquitted after a jury trial.

Plaintiff's amended complaint asserts seven counts. Count I is a claim of gross negligence against Garland, Wood and Rushing. Count II is a claim for intentional infliction of emotional distress against Garland, Wood and Rushing. Count III is a claim for assault and battery against Wood. Counts IV and V claim that the individual defendants violated Jordan's constitutional rights by committing unlawful arrest, excessive force and false imprisonment. Count VI is a civil rights claim against the Wayne County Sheriff, which has been mooted by the dismissal of the municipal defendant. Count VII is a claim for malicious prosecution against Garland, Wood, Rushing and Gaines. The plaintiff has since stipulated to dismissal of all defendants except for Wood and Rushing.

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir.1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). The Court is not required or

permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435-36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

**ANALYSIS**

Defendants argue that all claims against Rushing should be dismissed because plaintiff testified that Rushing never arrested, touched, handcuffed her or put her in jail. Furthermore, there are no allegations in the amended complaint that pertain to Rushing. Defendants argue that summary judgment is appropriate as to all claims against Rushing because there is no evidence that Rushing was responsible for any tort or constitutional deprivation. Plaintiff does not respond to defendants' arguments as to Rushing in her response, except to assert that Rushing is liable for assault and battery for failing to stop Wood from assaulting Garland. The Court agrees with defendants that there is no evidence upon which Garland can state a claim against Rushing and will enter summary judgment in favor of Rushing on all claims.

The remainder of defendants' summary judgment brief concerns Jordan's claims against Wood. Defendants argue that summary judgment is appropriate on all federal claims because the undisputed evidence in the record fails to establish any constitutional violation. Defendants also argue that summary judgment is appropriate on plaintiff's state-law claims because the evidence in the record shows that there is no issue of material fact and defendants are entitled to judgment as a matter of law on these claims and because the claims are barred by state governmental immunity.

I. <u>Is Wood Entitled to Summary Judgment on Jordan's Federal Constitutional Claims?</u>

Defendants argue that Jordan's federal constitutional claims against Wood should be dismissed because the undisputed facts in the record fail to state a claim against Wood for

either unlawful arrest or excessive force as a matter of law. For the reasons stated below, the Court agrees and will grant summary judgment to defendants on plaintiff's constitutional claims.

   A.  Unlawful Arrest

The Fourth Amendment of the United States Constitution guarantees that citizens may not be subject to unreasonable searches and seizures. A warrantless arrest, such as Jordan's, "is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).

> "The validity of the arrest does not depend on whether the suspect actually committed a crime...." *Michigan v. DeFillippo*, 443 U.S. 31, 36, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). Thus, "in order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause." *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir.2002). "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir.2007) (quoting *Henry v. United States*, 361 U.S. 98, 102 (1959)).

*Brooks v. Rothe* 577 F.3d 701, 706 (6th Cir. 2009)

Defendants argue that summary judgment is appropriate on plaintiff's claims of unlawful arrest because Officer Wood had probable cause, as a matter of law, to arrest Jordan.

Jordan was arrested and prosecuted for violating Mich. Comp. L. 750.81d(1), which makes it a felony to assault, batter, wound, resist, obstruct, oppose or endanger a person who the defendant has reason to know was performing his duty. Under Michigan law, a person may not use force to resist an arrest by one he knows or has reason to know is performing his duties, regardless of the legality of the arrest. *People v. Ventura*, 262 Mich. App. 370, 377-78 (2004). "'Obstruct' includes 'a knowing failure to comply with a lawful command.'" *People v. Chappo*, 283 Mich. App. 360, 367 (2009). The statute can be

7

violated in two ways: either by physically resisting a command, whether lawful or unlawful, or by refusing to comply with a lawful command without using force. *Brooks,* 577 F.3d at 707.

Defendants argue that the undisputed facts in the record show that Jordan physically resisted Wood's command, repeated three times, to stay out of the school. Defendants argue that Wood's command was unquestionably lawful, because he was instructed to refuse entry into the school by any outsiders while the riots were going on. Further, defendants argue, Jordan had no right to enter the school and therefore no basis for refusing to comply with Wood's lawful commands. Defendants argue in sum that the undisputed facts show that Wood has probable cause to arrest Jordan for violation of Mich. Comp. Laws 750.81d.

Plaintiff's reply does not address any of these arguments, but rather simply asserts that a genuine issue of fact is established because she asserts, without elaboration, that "plaintiff contends that defendants did not have probable cause to arrest Plaintiff."

On summary judgment, the moving party has the initial burden of identifying areas where there is an absence of material fact, and, when the moving party has done so, the burden shifts to the nonmoving party to come forward with admissible evidence showing genuine factual issues for trial. Fed. R. Civ. P. 56(e)(2). The Court finds that defendants have met their burden of showing the absence of a genuine issue of material fact on plaintiff's claim for unlawful arrest, and the plaintiff has failed to meet her burden of coming forward with evidence showing a genuine issue of fact. The Court will therefore enter summary judgment in defendants' favor on plaintiff's claim of unlawful arrest.

B. <u>Unlawful Force</u>

Jordan claims that there were four episodes of unlawful force committed by officers in arresting her. Specifically, as to Officer Wood, Jordan claims that Officer Wood pushed her three times as she was walking away from the school, lifted her up off the ground, and handcuffed her so as to cause her pain. Jordan also asserts a fourth episode of unlawful force by unidentified officers that she asserts slammed her into a sheriff car.

An officer is privileged to use handcuffs to effect a lawful arrest, so the use of handcuffs by themselves cannot constitute unlawful force. Officers are entitled to handcuff arrestees, and the Sixth Circuit has made clear that simply handcuffing an arrestee in the course of an otherwise lawful arrest does not constitute excessive force. *Neague v. Cynar*, 258 F.3d 504, 508 (6th Cir. 2001). The arrest here was a lawful one and therefore no constitutional claim can arise merely from the fact that Ms. Jordan was handcuffed.

As to the manner of Jordan's arrest and handcuffing, "the Fourth Amendment's 'objective reasonableness' test applies to all claims for excessive force." *Wysong v. City of Heath*, 260 Fed. Appx. 848, 854 (6th Cir. 2008) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)). Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. The Court must examine "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. This requires balancing plaintiff's Fourth Amendment interests against the government interests. *Id.* at 396. The Court is to look at factors such as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* The Supreme Court has also stated that not "every push and shove,

9

even if it may later seem unnecessary in the peace of the judge's chambers, violates the Fourth Amendment." *Id.*

Applying the *Graham* test to the undisputed facts in the record, the Court finds that Wood's use of force toward Jordan was objectively reasonable in light of the facts and circumstances confronting him that day. Viewing the evidence in the light most favorable to the plaintiff, Wood pushed Jordan away from the school building three times, lifted her up off the ground when she struck at him, and handcuffed her while she was struggling in a way that hurt her arm. Jordan admits that she never submitted to being arrested or being handcuffed. Jordan admitted that she pushed Wood away after he told her she was under arrest because she did not believe that he had the right to arrest her. (Trial tr. 76). While Jordan testified that she did not hit Wood, she did admit that she may have hit "at" him. (Trial tr. 74). The Court must also take into consideration the circumstances surrounding the arrest. The school was in lock down, with students rioting and at least 20 people arrested. Officer Wood was charged with securing one door to the school and preventing outsiders from entering, and the plaintiff's conduct threatened his ability to do his job under chaotic and dangerous circumstances.

The Court has little difficulty in finding the force used by Wood to be reasonable under the circumstances. *Cf. Burchett v. Kiefer*, 310 F.3d 937, 944 (2002) (officers' use of force to handcuff defendant reasonable as a matter of law when he admitted that he "twisted and turned some" when they tried to handcuff him, and officers had difficulty restraining him); *Wysong v. City of Heath*, 260 Fed. Appx. 848, 850, 854-55 (6th Cir. 2008) (in attempting to handcuff man suspected of making obscene gestures who flailed arms and legs about while officers attempted to handcuff him, officers acted reasonably in engaging in open-handed strikes and knee to the back of suspect).

As to plaintiff's claim that she was slammed on the sheriff car before being seated in the car, the plaintiff fails to attribute that conduct to Wood, or identify who she claims slammed her into the car. Where there is no evidence that directly ties a defendant to an alleged constitutional violation, summary judgment is appropriate as to that claim. *Wilson v. Morgan*, 477 F.3d 326, 337 (6th Cir. 2007).

For these reasons, the Court holds that defendant Wood is entitled to summary judgment as to plaintiff's claim for excessive force.

II. <u>State Tort Claims</u>

Jordan also asserts state law claims of intentional infliction of emotional distress and malicious prosecution against Wood and Rushing, and a claim for assault and battery against Wood. Defendants argue that summary judgment is appropriate on these claims because the undisputed facts in the record fail to establish any of these claims and because the defendants are immune under Mich. Comp. Laws 691.1407. The Court agrees that summary judgment is appropriate on plaintiff's state law claims.

    A. <u>Intentional Infliction of Emotional Distress</u>

The elements of a claim for intentional infliction of emotional distress are (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. *Roberts v. Auto-Owens Ins. Co.*, 422 Mich. 594, 602 (1985). Defendants argue that Jordan cannot state a claim for intentional infliction of emotional distress because she cannot establish either extreme and outrageous conduct or severe emotional distress.

A claim for intentional infliction of emotional distress can only be sustained where "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Roberts*, 422 Mich. at 603. Whether the offending conduct is

extreme and outrageous is initially a question of law for the court. *Sawabini v. Desenberg*, 143 Mich. App. 373, 383 (1985).

Jordan's claims for intentional infliction of emotional distress in this matter are that Wood pushed her away from the school, used too much force in arresting her, arrested her without probable cause and caused her to be incarcerated in the Wayne County Jail for over twenty hours. (Jordan Dep. 31-33). This does not constitute extreme and outrageous conduct as defined by the Michigan courts and therefore summary judgment is appropriate on Jordan's claim of intentional infliction of emotional distress.

B. <u>Malicious Prosecution</u>

The elements of a claim for malicious prosecution are that the defendant (1) initiated a criminal prosecution against the plaintiff, (2) the criminal proceedings terminated in plaintiff's favor, (3) the person who instituted or maintained the prosecution lacked probable cause, and (4) the action was undertaken with malice or purpose other than to bring the offender to justice. *Matthews v. Blue Cross & Blue Shield of Michigan*, 456 Mich. 365, 378 (1998). Defendants argue that plaintiff cannot establish the third or fourth element of the cause of action and therefore summary judgment is appropriate. Specifically, defendants argue that Wood had probable cause to have Jordan arrested and prosecuted because she resisted, obstructed and disobeyed a lawful police order and the plaintiff has presented no evidence that would give rise to a reasonable inference that he initiated or maintained the prosecution against her for an improper purpose.

Jordan argues in response that the Court is required to accept her version of events as true, and she asserts that Wood prosecuted her to cover up his assault of her. Jordan's response amounts to nothing more than a conclusory assertion, which is insufficient to meet her burden of offering admissible evidence showing a genuine issue of material fact.

12

*Anderson v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). The Court will therefore grant summary judgment to defendants on the malicious prosecution claim.

    C. <u>State immunity</u>

Defendants argue in the alternative that Wood is protected from suit by state governmental immunity. In the case of intentional torts, immunity is provided against state law claims for government officials where (a) the acts were taken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority, (b) the acts were undertaken in good faith and without malice, and (c) the acts were discretionary. *Odom v. Wayne County*, 482 Mich. 459, 479-80 (2008). The Court will not reach this issue because it finds that summary judgment is appropriate on plaintiff's intentional tort claims without regard to immunity.

    D. <u>Gross Negligence</u>

Count I of the complaint asserts a claim of gross negligence against Wood and Rushing. The governmental immunity statute carves out an exception when the employee's conduct constitutes gross negligence that is a proximate cause of injury or damage. Gross negligence is defined in the statute as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." Mich. Comp. Laws § 691.1407(7)(a). Defendants argue that the facts in the record establish as a matter of law that Wood was not grossly negligent in arresting or handcuffing the plaintiff.

The Court finds that dismissal of plaintiff's gross negligence claim is appropriate because plaintiff's claim is fully premised on the alleged torts of assault and battery, malicious prosecution and unlawful arrest, and Michigan courts reject attempts to transform claims involving elements of intentional torts into claims of gross negligence. *Van Vorous v. Burmeister*, 262 Mich. App. 467, 483-84 (2004). Jordan's claim of gross negligence is

simply a recasting of her intentional tort claims in the language of negligence and therefore, under Michigan precedent, fails to state a claim for relief. The Court will therefore dismiss Count I of the amended complaint.

In sum, the Court will grant defendants' motion for summary judgment in full, and will therefore enter summary judgment in favor of defendants on all counts of the complaint.

**ORDER**

**WHEREFORE, IT IS HEREBY ORDERED** that defendants' motion for summary judgment (docket no. 47) is **GRANTED.**

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: June 3, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 3, 2010, by electronic and/or ordinary mail.

Alissa Greer
Case Manager